# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3229

_____

United States of America

*Plaintiff - Appellee*

v.

Deandre Julian Hensley

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: February 9, 2026
Filed: July 15, 2026
[Unpublished]

_____

Before COLLOTON, Chief Judge, BENTON and KELLY, Circuit Judges.

_____

PER CURIAM.

Deandre Hensley pleaded guilty to two firearms offenses and was sentenced to 204 months of imprisonment. He appeals, asserting the district court[1] made several errors at sentencing. After careful review, we affirm.

_____

[1]The Honorable Stephen H. Locher, United States District Judge for the Southern District of Iowa.

I.

On July 21, 2023, Hensley was arrested on outstanding state warrants. During a subsequent search, law enforcement found a Glock 26 9mm pistol affixed with a magazine in Hensley's waistband, a baggie of approximately 7 grams of cocaine base in his pocket, an iPhone, and keys to a Chrysler 300. On September 6, 2023, the grand jury returned a three-count indictment charging Hensley with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count 1); possession with the intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count 2); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 3). Pursuant to a plea agreement, Hensley pleaded guilty to both firearm counts, and the government agreed to dismiss the drug count.

The plea agreement included a factual stipulation, several paragraphs of which outlined information law enforcement had gathered about a shooting on July 4, 2023, at a Davenport bar where two people were injured by gunfire. In an alley across the street from the bar, officers found multiple 9mm casings. Surveillance video showed a dark Chrysler 300—with visible window tinting, passenger side damage, and a rectangular object taped to the rear window—driving in the bar's parking lot and the alley near the time of the report of shots fired. Witnesses also reported seeing a dark Chrysler 300 leave the bar's parking lot just before the incident. And law enforcement saw Hensley in the driver's seat of a Chrysler 300—which had tinted windows, passenger side damage, and a temporary registration tag in the rear window—on both May 5, 2023, and July 12, 2023. Later, law enforcement tested the firearm seized from Hensley and determined that its casings were consistent with those found in the alley on July 4, 2023. The parties also stipulated that, on July 4, 2023, Hensley possessed the same Glock 26 9mm pistol that was in his waistband at the time of his arrest, along with multiple pieces of 9mm ammunition of the same brands as the ammunition found in the alley.

The case proceeded to sentencing. Based on the July 4, 2023, shooting, the government asked the court to calculate Hensley's offense level by applying a cross reference to attempted murder. Hensley objected. First, he argued the use of uncharged conduct—here, the shooting incident at the bar—at sentencing is "categorically unconstitutional." Second, he argued that the government failed to establish that the shooting was relevant conduct or that Hensley was involved in it.

The district court overruled Hensley's objections. The court found that use of uncharged conduct to determine Hensley's sentence within the parameters set by statute was permissible. The court also found the government met its burden of proving by a preponderance of the evidence that Hensley was the shooter on July 4, 2023, and that the cross reference to attempted murder applied. With a total offense level of 30 and a criminal history category IV, Hensley's advisory Guidelines range was 135 to 168 months on Count 1. After hearing arguments from counsel and allocution from Hensley, the district court imposed a 144-month sentence on Count 1 and the mandatory minimum 60-month sentence on Count 3, to be served consecutively for a total of 204 months of imprisonment. Hensley appeals his sentence.

## II.

## A.

"[W]e review a district court's sentence in two steps: first we review for significant procedural error; and second, if there is no significant procedural error, we review for substantive reasonableness." United States v. Jones, 89 F.4th 681, 684 (8th Cir. 2023). In reviewing for procedural error, "we review a district court's interpretation and application of the guidelines de novo and its factual findings for clear error." Id. (quoting United States v. Godfrey, 863 F.3d 1088, 1095 (8th Cir. 2017)). "We reverse for clear error 'only when the entire record definitely and firmly illustrates that the [district] court made a mistake.'" Id. (quoting United States v. Clark, 999 F.3d 1095, 1097 (8th Cir. 2021) (per curiam)). We review claims of

constitutional sentencing error de novo. United States v. Winfrey, 23 F.4th 1085, 1086 (8th Cir. 2022). If we find no procedural or constitutional error, we next review Hensley's sentence for substantive reasonableness. See Jones, 89 F.4th at 684.

B.

Hensley challenges the calculation of his offense level. The Guidelines provision applicable to Count 1, § 2K2.1, provides for a cross reference. USSG § 2K2.1(c)(1). It states:

> If the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense . . . apply—(A) §2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than [otherwise under § 2K2.1].

Id. Section 2X1.1(c)(1), in turn, directs that "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section." USSG § 2X1.1(c)(1). The district court found that Hensley committed the offense of attempted murder, which is "expressly covered by another offense guideline section" at § 2A2.1(a)(1), and applied the cross reference to calculate his offense level.

Hensley does not dispute that the July 4, 2023, shooting, which injured two people, qualified as attempted murder. Rather, he argues the government failed to prove by a preponderance of the evidence that he was the person who fired the shots. He points out that there were no eyewitnesses who identified him as the shooter, and he asserts that the mere presence of his car at the scene is not sufficient to establish his involvement in the shooting.

We agree that mere presence at the scene of a crime is insufficient to establish participation in the crime. See, e.g., United States v. Nichols, 76 F.4th 1046, 1056 (8th Cir. 2023) (holding evidence was insufficient to apply attempted murder cross

-4-

reference to a "backseat passenger in the vehicle from which shots were fired"). But that is not the factual scenario here. The undisputed evidence showed that Hensley's car was seen in the alley across the street from the location of the shooting in the moments before and after shots were fired at the bar. Location data obtained from a search of Hensley's iPhone showed the phone was at the bar's parking lot minutes before the shooting. The casings found in the alley after the shooting matched the firearm Hensley had in his possession at the time of his arrest about two weeks later. And Hensley conceded that he possessed that same firearm, as well as multiple pieces of ammunition of the same brands as the casings found in the alley near the bar, on July 4, 2023. Rather than mere presence, the district court found that "[a]ll the pieces fit together just right" to support the conclusion Hensley "was the one who fired the shots." On this record, we see no clear error in the district court's findings.

Alternatively, Hensley argues that even if the government met its burden to prove he was the shooter on July 4, 2023, the incident was not relevant conduct for purposes of the Guidelines and, thus, could not form the basis of a cross reference. According to Hensley, "an attempted murder is not part of the same course of conduct as the mere possession of a firearm." But relevant conduct includes "acts and omissions committed . . . or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction[.]" USSG § 1B1.3(a). Hensley admitted that he unlawfully possessed a firearm and ammunition on July 4, 2023— the same firearm and ammunition that, according to the district court's findings, were used in the shooting on that same day. Hensley offers no rationale to support the conclusion that the shooting did not occur during the commission of his offense of conviction: possessing a firearm as a convicted felon. See e.g., United States v. Clark, 999 F.3d 1095, 1097–98 (8th Cir. 2021) (per curiam) (affirming application of cross reference to § 2A2.1 where defendant shot someone "with the same gun he pleaded guilty to possessing").

Hensley also contends the district court violated his constitutional rights to due process and trial by jury when it relied on uncharged conduct to increase his

sentence. As Hensley appears to recognize, this argument is foreclosed by precedent. See United States v. Steffen, 818 F.3d 770, 771–72 (8th Cir. 2016) (holding, against a defendant's arguments under the Fifth and Sixth Amendments, that it is "constitutionally permissible" for a district court to determine a defendant's advisory Guidelines range using uncharged relevant conduct); see also USSG § 1B1.3, comment. (backg'd.) ("Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range.").

## C.

Finally, Hensley asserts that the district court imposed a substantively unreasonable sentence. We review this claim for abuse of discretion. See Jones, 89 F.4th at 684. "[A] district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." Id. at 685–86 (quoting United States v. Palkowitsch, 36 F.4th 796, 802 (8th Cir. 2022)).

Hensley contends the district court erred in failing "to give proper weight to his age, history and characteristics, substance abuse struggles, and lack of role-models during his childhood." Our review of the record shows the district court considered these factors, mentioning nearly all of them when determining the appropriate sentence. And as to the one factor it did not mention—substance abuse—the court recommended that Hensley participate in a treatment program in the Bureau of Prisons because "substance abuse treatment makes sense for Mr. Hensley." The weight given to these relevant factors falls within the sound discretion of the district court. United States v. Crumble, 965 F.3d 642, 647 (8th Cir. 2020). We see no abuse of that discretion here.

## III.

The judgment of the district court is affirmed.

_____